UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE E. ROSAS,<br><br>           Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>           Defendant. | ) Case No. SA CV 11-454-PJW<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI").  He claims that the Administrative Law Judge ("ALJ") erred when he failed to consider all of his impairments as well as his girlfriend's testimony.  (Joint Stip. at 2-43.)  He also complains that the Appeals Council failed to consider new and material evidence.  (Joint Stip. at 43-45.)  For the reasons discussed below, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this opinion.

## II.

## SUMMARY OF PROCEEDINGS

In April 2007, Plaintiff applied for SSI, alleging disability beginning March 2007, due to fatigue, memory loss, depression, an inability to concentrate, headaches, seizures, and neuropathy. (Administrative Record ("AR") 106-12, 118, 134.)  The Agency denied the application initially and on reconsideration.  Plaintiff then requested and was granted a hearing before an ALJ.  (AR 88-90.) Plaintiff appeared with counsel and testified at the hearing on August 7, 2008.  (AR 17-60.)  The ALJ subsequently issued a decision denying benefits.  (AR 10-15.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-4.)  He then commenced this action.

## III.

## ANALYSIS

A.   The ALJ's Failure to Address Plaintiff's Girlfriend's Testimony

Prior to the administrative hearing, Plaintiff's girlfriend, Margaret Salazar, submitted an eight-page questionnaire, detailing her observations of Plaintiff's difficulties.  (AR 125-32.)  She also testified at the administrative hearing about his condition.  (AR 45-52.)  Though the ALJ noted in passing that Salazar had testified, he never addressed why he was rejecting her testimony, which, clearly, he must have because he did not include any of her observations in the residual functional capacity assessment.  (AR 14.)

Lay testimony is competent evidence and, therefore, an ALJ is required to consider it in determining if a claimant is disabled.  *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account.").  Failure to consider lay testimony

constitutes error. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Further, the error mandates reversal unless the Court can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have found that the claimant was disabled. *Id.* at 1056 ("[W]e hold that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

    The Agency concedes that the ALJ erred in failing to address Salazar's testimony but argues that the error was harmless because her testimony was similar to Plaintiff's and the ALJ rejected his testimony. (Joint Stip. at 5-6.) This argument is rejected for two reasons. First, the test applied in evaluating the ALJ's failure to address lay testimony is to credit the testimony and then determine if any reasonable ALJ might have found Plaintiff disabled. *Stout*, 454 F.3d at 1056. Applying this test, it is clear that the error was not harmless. If Salazar's testimony that Plaintiff suffered seizures, had trouble concentrating, and had to regularly lie down due to pain and discomfort was accepted as true, any reasonable ALJ would have concluded that Plaintiff was unable to work, at least not at the jobs identified by the ALJ. (AR 49-50, 57-58.)

    The second reason the Agency's argument is rejected is because it was not relied on by the ALJ in reaching his decision. Neither the Court nor the Agency can comb through the record on appeal, looking for reasons the ALJ could have relied on to reject the witness's testimony but did not and superimpose them on the ALJ's decision.

*See, e.g., Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It is error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss."). For these same reasons, the Agency's argument that the Court should overlook Salazar's testimony because it lacked foundation because, at the time of the administrative hearing, she was not spending a lot of time with Plaintiff (Joint Stip. at 5-6) is also rejected. So, too, is its argument that her testimony was not material because it was cumulative of Plaintiff's testimony. (Joint Stip. at 6.) Though the ALJ could have rejected Salazar's testimony for these reasons, he did not. And the Court will not affirm the ALJ's decision for reasons he did not rely on. As such, the case is remanded to the Agency to for further consideration of Salazar's testimony.

B.   <u>The Residual Functional Capacity Determination</u>

Plaintiff argues that the ALJ did not include all of his impairments in the residual functional capacity finding. (Joint Stip. at 8-9.) He points out, for example, that the results of a nerve conduction study were consistent with carpal tunnel syndrome, yet the ALJ did not include a limitation for symptoms related to carpal tunnel syndrome in the residual functional capacity finding. (Joint Stip. at 8.) Plaintiff notes that some of the doctors determined that he had mental limitations but the ALJ did not include those limitations in the residual functional capacity assessment, either. (Joint Stip. at 8-9.) For the following reasons, this claim is denied.

The ALJ was only required to include in the residual functional capacity finding those impairments which he found were supported by the evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (holding ALJ only required to include in hypothetical question

to vocational expert those limitations found to be supported by the evidence). He did not find that Plaintiff suffered from carpal tunnel syndrome and, therefore, was not required to include limitations caused by carpal tunnel syndrome in his residual functional capacity finding. The fact that test results were consistent with a finding of carpal tunnel syndrome (AR 223) does not establish that Plaintiff suffers from carpal tunnel. In fact, the doctor who performed that test did not diagnose Plaintiff with carpal tunnel. (AR 223.) Nor did any other doctor. (AR 238, 240, 561, 738, 754.) For these reasons, the ALJ did not err in not including the alleged effects of carpal tunnel syndrome in the residual functional capacity.

Plaintiff argues that the ALJ overlooked his mental impairments. (Joint Stip. at 8-9.) He notes that examining psychologist Ahmed Riahinejad found a "significant difference in IQ testing." (Joint Stip. at 8.) He also points out that reviewing doctor Lydia Mallare concluded that Plaintiff was moderately limited in his ability to maintain concentration, persistence, and pace, which restricted him to work involving simple, repetitive tasks. (Joint Stip. at 8-9.) For the following reasons, the Court finds that these arguments are not persuasive.

Dr. Riahinejad examined Plaintiff and performed various tests, concluding that Plaintiff's overall IQ was 85 and that he could carry out simple instructions. (AR 232-33.) Though the doctor noted that the difference between Plaintiff's verbal IQ score of 98 and his performance IQ score of 70 was significant, he attributed the discrepancy to Plaintiff's vision problems, not to any cognitive limitations. (AR 232-33.) Thus, the ALJ's reliance on Dr. Riahinejad's opinion to conclude that Plaintiff did not have a severe

mental impairment and could perform his past relevant work (mostly unskilled work) was not in error.

As to Plaintiff's argument that the ALJ should have accepted non-examining doctor Lydia Mallare's opinion--that Plaintiff was moderately limited in his ability to maintain concentration, persistence, and pace and could only perform work involving simple, repetitive tasks (AR 257, 259)--over examining Dr. Riahinejad's opinion, again, the Court disagrees. The ALJ was tasked with determining which doctor to rely on. He chose to rely on examining doctor Riahinejad because Dr. Riahinejad had examined Plaintiff and because his opinion was not contradicted by the treating doctors. (AR 14.) These are specific and legitimate reasons for accepting an examining doctor's opinion over a non-examining doctor's opinion and, therefore, the ALJ's decision will not be disturbed. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("[T]he conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician.")

Finally, Plaintiff argues that the ALJ overlooked his counsel's argument that Plaintiff would be absent from work frequently and that that would preclude him from holding down a job. (Joint Stip. at 9.) But the evidence that Plaintiff would miss work frequently came from Drs. Winkle and Mallare (AR 261, 563) and the ALJ discounted their opinions. Thus, he was not required to consider Plaintiff's alleged propensity for absenteeism in evaluating Plaintiff's ability to work. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).[1]

---

[1] The ALJ may need to reconsider the residual functional capacity finding after addressing Ms. Salazar's testimony.

C.   <u>The Appeals Council's Consideration of the New Evidence</u>

Following the ALJ's October 2008 decision denying his claim for benefits, Plaintiff appealed to the Appeals Council, submitting hundreds of pages of new records, which documented his medical treatment both before and after the ALJ's decision. (AR 565-758.) Most notably were records showing that, in July 2009, Plaintiff had emergency heart surgery to repair blocked coronary arteries. (AR 738.) Despite these new records, the Appeals Council affirmed the ALJ's decision. AR 1-4.)

Plaintiff argues that the Appeals Council failed to consider the new records. (Joint Stip. at 43-44.) The record contradicts this argument. The Appeals Council noted in its decision that it had considered this evidence (AR 1, 4) and the Court accepts that representation. Thus, this argument is rejected.

Plaintiff argues in the alternative that the Appeals Council erred in not reversing the ALJ's decision based on this new evidence because it shows that Plaintiff is severely impaired and incapable of maintaining employment and suggests that he was disabled as of the date of the ALJ's decision. He argues that, contrary to the Agency's argument that the evidence goes to the period following the ALJ's decision and is therefore irrelevant to assessing Plaintiff's condition prior to the decision, it relates back to the pre-decision period and exemplifies what Plaintiff was arguing throughout, that he was incapable of working. (Joint Stip. at 45.)

The Court sides with the Agency, here. Though some of the records relate to the period prior to the ALJ's decision and others, though relating to the period after the ALJ's decision could be read as circumstantial evidence about Plaintiff's condition before the

1  ALJ's decision, the records as a whole relate to a condition that was
2  not raised by Plaintiff or addressed by the ALJ, i.e., coronary heart
3  disease.  Plaintiff never claimed before the ALJ that he was disabled
4  due to heart disease.  He alleged disability based on fatigue, memory
5  loss, depression, an inability to concentrate, headaches, seizures,
6  and neuropathy. (AR 118, 134.)  That is what he had been diagnosed
7  with and what he was being treated for. (AR 561.)  Plaintiff's
8  emergency heart surgery nine months after the ALJ's decision was to
9  treat a different condition.  Though, presumably, Plaintiff's coronary
10 heart disease was a progressive condition that was present to some
11 degree in October 2008, it was not the basis for his disability claim
12 and was not addressed by his counsel or the ALJ.  As such, the Appeals
13 Council did not err when it determined that Plaintiff's emergency
14 heart surgery in July 2009 did not establish that the ALJ's October
15 2008 decision that Plaintiff was not disabled was erroneous.  *See*,
16 *e.g.*, *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (holding
17 district court did not err in refusing to remand case based on new
18 evidence where evidence was not "material" because it related to
19 condition that was not at issue before the ALJ).

IV.

CONCLUSION

For the reasons set forth above, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this opinion.[2]

IT IS SO ORDERED.

DATED: March 20, 2012.

                                      */s/ Patrick J. Walsh*
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\ROSAS, 454\memo.opinion. and order.wpd

---

[2] The Court has considered Plaintiff's request that the case be remanded for an award of benefits. That request is denied. It is not clear from this record that Plaintiff is entitled to benefits and further proceedings are necessary to resolve that issue.